IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| **WEB JOIST NORTHWEST CORP.,** a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>**REDBUILT LLC,** a Delaware limited liability company and **CALIFORNIA STEEL AND TUBE, LLC**, a Delaware limited liability company,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>(Conspiracy to Restrain Trade; Conspiracy to Monopolize; Monopolization; Discriminatory Pricing)<br><br>(Violation of Sherman Act, 15 U.S.C. §§ 1 and 2; Violation of Robinson-Patman Act, 15 U.S.C. § 13)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges as follows:

## INTRODUCTION

1.      This an action under multiple antitrust laws challenging the conspiracy of two monopolists:  Redbuilt LLC ("Redbuilt"), which produces 95% of the open web pin-connected trusses sold in the United States; and California Steel and Tube, LLC ("California Steel"), which manufactures 100% of the galvanized structural steel tubing utilized in open web pin-connected trusses. This steel tubing represents 30% to 40% of the cost of open web pin-connected trusses. These two defendants are conspiring to drive Web Joist Northwest Corp. ("Web Joist"),

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax: (503) 225-1257**
**PL01--53078**

Redbuilt's sole remaining competitor with an estimated 5% market share, out of business, paving the way for both monopolists to charge supra-competitive prices for their products to the detriment of American consumers.

2.       The centerpiece of the Redbuilt/California Steel conspiracy is a secret exclusive dealing arrangement under which California Steel manufactures and sells exclusively to Redbuilt the highest grade of round steel structural tubing ("steel tubing") – ASTM A500 Grade C.  For more than two decades prior to 2016, Web Joist purchased ASTM A500 steel tubing from California Steel in a variety of gauges and diameters.  For the past two years, California Steel has falsely claimed that it can no longer manufacture structural steel tubing to the ASTM A500 specifications, and instead supplies what it certifies as a lower grade of galvanized nonstructural steel tubing to Web Joist, specifically ASTM A787.  Contrary to California Steel's representations, this lower grade nonstructural steel tubing in fact meets the ASTM A500 specifications for structural steel tubing.

3.       This supposed lower grade of steel tubing is sold to Web Joist by California Steel at higher prices than those it charges to Redbuilt for what California Steel continues to certify solely to Redbuilt as ASTM A500 Grade C structural tubing.  In addition to having to absorb illegal price discrimination as a result of defendants' conspiracy, Web Joist must also spend an average of $1,000 per truck load securing metallurgical tests of the steel tubing supplied by California Steel to document the fact that the steel tubing it incorporates into its open web trusses does meet the ASTM A500 Grade C specification that Web Joist represents is incorporated into its products.

4.       Defendants' conspiracy is crippling Web Joist's ability to compete in the open web truss market and, ultimately, will drive it out of business.  If the defendants are allowed to

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax: (503) 225-1257**
**PL01--53078**

succeed in forcing Web Joist out of the already concentrated open web truss market, it will

further consolidate Redbuilt's monopoly power and enable it to charge supra-competitive prices

without fear of losing bids.  This in turn will enable California Steel to reap monopoly profits by

artificially raising the price of steel tubing, knowing that Redbuilt can pass the costs through to

its customers with impunity.

5.     This case seeks injunctive and monetary relief from Redbuilt and California

Steel's anti-competitive conduct under the antitrust laws of the United States, specifically

Section 2(a) of the Robinson-Patman Act, which prohibits the sale of goods of like grade and

quality to different purchasers at different prices; Section 2(f) of the Robinson-Patman Act,

which prohibits the knowing inducement or receipt of discriminatory pricing; and Sections 1 and

2 of the Sherman Act, which prohibit conspiracies to restrain trade and the monopolization of

any segment of U.S. commerce, respectively.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over plaintiff's federal antitrust claims pursuant to 28

U.S.C. §§ 1331 and 1337.

7.     Venue in this district is proper under 28 U.S.C. § 1391, because defendants

transact business within this district and a substantial part of the events giving rise to plaintiff's

claims occurred within this district.

## PARTIES

8.     Plaintiff Web Joist Northwest Corp. is a Washington corporation headquartered in

Chehalis, Washington.  Web Joist is a manufacturer of open web trusses, which provide

structural support in flooring and roofing systems installed in commercial and industrial

buildings throughout the United States.

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax:  (503) 225-1257**
**PL01--53078**

9.      Web Joist Corporation was originally founded by L.E. (Vern) Sweet in 1976 as a manufacturer of high quality engineered wood products.  In 1981, Sweet founded Web Joist Northwest Corp. and moved the company's operations to a new manufacturing facility in Chehalis, Washington.

10.      Vern Sweet passed away in 2013.  Web Joist remains a family-owned business. The company is now managed by Vern's son Kevin Sweet and daughter-in-law Jennifer Sweet. For more than 40 years, Web Joist has earned a reputation for manufacturing high quality engineered wood products from certified, high-grade materials.  Since its founding, Web Joist's flagship product has been the open web truss, which it custom builds in a variety of sizes, styles, and strengths for its customers.

11.      Defendant Redbuilt LLC is a Delaware limited liability company with its principal place of business located in Boise, Idaho. Redbuilt is a wholly owned subsidiary of Atlas Holdings, LLC, a private equity firm that owns dozens of industrial operations generating approximately $5 billion in revenue annually. Redbuilt is the dominant manufacturer of open web trusses in the United States and a direct competitor of Web Joist.  Since acquiring its largest competitor in September 2011, Redbuilt has manufactured and sold more than 90% of the open web trusses sold in the United States during each of the last five years.

12.      Defendant California Steel and Tube, LLC is a Delaware limited liability company with its principal place of business located in City of Industry, California.  California Steel is a wholly owned subsidiary of Kloeckner & Co SE, a large publicly held company headquartered in Germany.  California Steel is the dominant manufacturer of steel tubing in the United States.  California Steel has manufactured and sold 100% of the steel tubing incorporated into open web trusses in the United States during each of the last five years.

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax:  (503) 225-1257**
**PL01--53078**

## RELEVANT MARKET ALLEGATIONS

### (United States Steel Tubing Market)

13.     Steel tubing is a commodity product defined as a particular type of cold-formed round galvanized and welded steel tubing that is suitable for use in construction of open web pin-connected trusses.  Specifically, steel tubing, must: (1) be of a gauge, diameter, and strength that is appropriate for construction of open web trusses; and (2) bear an external seam that is visible to manufacturing workers engaged in punching holes in the tubing to accommodate steel connector pins.

14.     The barriers to entry into the steel tubing market are significant.  Specifically, producing large cold-formed steel coils and machining them into steel tubing requires significant capital investment in sophisticated machinery that is cost prohibitive to most would-be market entrants.

15.     For at least the last five years, California Steel has dominated the United States steel tubing market, holding at least a 90% market share.  While a small group of other manufacturers produce limited amounts of steel tubing in a restricted range of gauges and diameters, only California Steel is capable of supplying steel tubing in a manner that meets the commercial needs of open web truss manufacturers like Web Joist.

16.     Web Joist relies exclusively on California Steel for its supply of steel tubing.  Redbuilt does as well.

### (United States Open Web Truss Market)

17.     Open web trusses are engineered wood products designed to provide structural support in roofing and flooring applications.  They are primarily used in commercial and industrial buildings.  Although open web trusses vary in size, strength, and style according to the

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax:  (503) 225-1257**
**PL01--53078**

custom needs of a particular project, they share a fundamental structure – including top and bottom machine stress rated wood chords connected by a steel tubing web secured by steel connector pins – that differentiates them from other flooring and roofing support systems. Because of their unique design and structural features, open web trusses are frequently called for specifically in architectural plans and therefore are not reasonably interchangeable with other structural support products.

18.     An open web truss, sometimes referred to as a web joist, is a pin-connected truss manufactured using a combination of wood chords and steel webs.  Open web trusses provide structural integrity, and are a popular feature of commercial and industrial building design throughout the United States.  Each open web truss consists of strength-rated structural top and bottom wood chords, connected by sections of steel tubing that are inserted into the chords and secured by steel connector pins.

19.     Steel tubing is machined by cutting lengths from a cold-formed galvanized steel coil and forming them into the desired cylindrical shape.  As a result of this process, each tube has a seam that runs the length of the tube indicating where the steel was welded after being cut from the coil.  To be used in the manufacture of an open web truss, the seam must be located on the exterior surface of the tubing.  This is because the workers who fabricate the steel tubing components of the trusses, which includes punching holes to accommodate the steel connector pins, need to see the location of the welded seam in the tubing in order to avoid locating the punch too close to the tube seam.

20.     In order to be suitable for use in open web trusses, steel tubing must meet strength thresholds specified in annual reports that Web Joist – and all open web truss manufacturers – file with the International Code Council Evaluation Service ("ICC-ES").  The strength of steel

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR 97201**
**Tel: (503) 225-0777 / Fax: (503) 225-1257**
PL01--53078

tubing is measured through testing in accordance with the internationally recognized ASTM A500 standard. The ASTM A500 standard requires sellers of ASTM A500 certified steel tubing to provide test results and certification demonstrating that the tubing meets the grade strength identified in the purchase order. Units of steel tubing certified under the ASTM standard are marked with stickers or tags that designate their certification.

21.     The weight bearing capacity of an open web truss is derived both from its design and the inherent strength of its component materials. Like Redbuilt, Web Joist renews its annual report to the ICC-ES describing the performance characteristics of its products and their constituent parts. Web Joist's reports are subject to inspection and are published by ICC-ES. The published reports provide contractors with accurate information regarding Web Joist's products. In order to comply with its ICC-ES report, the steel tubing that Web Joist used must be tested to ensure that it meets reported strength specifications.

22.     The United States open web truss market is highly concentrated. For at least the last five years, Rebuilt has dominated the United States open web truss market, holding a market share of approximately 95%.

23.     Web Joist competes directly with Redbuilt in the United States open web truss market. During the last five years, Web Joist has held a market share of approximately 5%.

## THE REDBUILT/CALIFORNIA STEEL CONSPIRACY

24.     Virtually all design specifications for commercial and industrial building projects in the United States that call for open web trusses also call for the steel tubing component to be ASTM A500 certified. For approximately 20 years through 2015, California Steel certified the steel tubing it sold to Web Joist as meeting the ASTM A500 specifications and provided Web Joist with the required test results and proof of certification.

7 – COMPLAINT
CASE NO. _____

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR 97201**
**Tel: (503) 225-0777 / Fax: (503) 225-1257**
**PL01--53078**

25.     In fact, the ASTM A500 standard requires manufacturers of steel structural tubing meeting that standard to "furnish to the purchaser a certificate of compliance stating that the product was manufactured, sampled, tested, and inspected in accordance with this specification." In 2016, however, California Steel stopped providing certifications and test results showing that the steel tubing it was supplying to Web Joist met the ASTM A500 standard and instead began certifying the steel tubing as galvanized nonstructural ASTM A787 and providing test results meeting that lower nonstructural standard.  California Steel implemented this significant change without any notice or explanation to Web Joist.

26.     Web Joist first discovered the change in certification in early 2017 and promptly contacted its California Steel sales representative to raise serious concerns regarding California Steel's significant change in product certification and testing results.  In an email to Web Joist dated February 17, 2017, California Steel sales representative John Betance forwarded the following response, which also copied California Steel's tubing sales manager Patty Heidenrich and its president, Rich Hirsch:

> Thank you very much for the opportunity to supply you with your galvanized tube needs.  The steel we use does not give us the opportunity to meet all of the specifications that are required to meet A500.  We are happy to certify our tubing to meet A787 specifications.  We as a courtesy send samples to a independent testing lab to generate information only testing of the physical characteristics. We hope this information will provide you the information you need to satisfy your engineering needs. We cannot provide any other certification.

27.     Following receipt of California Steel's February 17, 2017 email, Web Joist took steps to secure its own independent metallurgical testing to document that its publicly filed representations with the International Code Council Evaluation Service are accurate. These tests must also be available for periodic review by an ICC-ES-required independent third party

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax: (503) 225-1257**
**PL01--53078**

inspector who examines the manufacturing operations of open web truss manufacturers like Web Joist and defendant Redbuilt and verifies the use of appropriately certified component parts.

28.    In its efforts to secure its own metallurgical testing, Web Joist contacted Metals Technology, Inc., the testing laboratory that Web Joist knew had long been used by California Steel.  Web Joist also knew that California Steel provided samples of its steel tubing in each gauge and diameter with the heat number, the quality control number associated with the particular coil of steel from which the steel tubing was manufactured.  Knowing that California Steel was providing samples to Metals Technology to secure the ASTM A787 certification that it was now providing, Web Joist asked Metals Technology if it could simply rerun the same samples to verify that the steel tubing it was purchasing met the ASTM A500 Grade C standard. In responding to this request, Metals Technology advised that it would need the permission of California Steel to utilize those samples.  When Metals Technology followed up with California Steel regarding granting access to those samples already held by Metals Technology, California Steel refused, stating "absolutely not."  This forced Web Joist to get its own samples from the steel tubing purchased from California Steel by heat number and to forward those samples to Metals Technology in Northridge, California for testing under the ASTM A500 Grade C specification.

29.    During the week of March 3, 2017, Web Joist received delivery of a truck load of steel tubing from California Steel.  At the time of delivery, the truck driver complained that he had been forced to wait at California Steel's plant in City of Industry, California for over four hours while California Steel employees removed dozens of product labels from banded units of steel tubing and replaced those labels with labels showing that the product was nonstructural steel tubing manufactured to the ASTM A787 standard.  In this process, however, California

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR  97201
Tel:  (503) 225-0777 / Fax:  (503) 225-1257
PL01--53078

Steel inadvertently missed one of the labels on a banded unit, which still had the original sticker showing that the product was in fact ASTM A500 Grade C.  A photograph of that sticker on the still intact unit on the date of delivery to Web Joist's Chehalis plant is shown below:



30.     In early April 2017, Web Joist received a sales order confirmation from California Steel concerning its purchase order No. 3916 showing that the steel tubing product that it had ordered was ASTM A500 Grade C.  Less than three hours later, California Steel issued a revised sales order confirmation changing the specification of all of the ordered steel tubing to ASTM A787.

31.     These developments caused Web Joist to recontact California Steel regarding their supplier's ability to supply Web Joist with ASTM A500 Grade C steel.  On April 19, 2017 and again on April 27, 2017, when Web Joist placed  new orders for steel tubing with California Steel, the purchase order specifically called out ASTM A500 Grade C steel tubing and requested an ASTM certificate of compliance stating that the product was manufactured, tested and inspected in accordance with ASTM specifications.  On April 27, 2017, California Steel's sales manager Patty Heidenrich emailed a response, which stated:  "Unfortunately we cannot produce our tubing to meet your specifications.  Please refer to our email to you on 2/17/17. . . We look forward to your revised order for 787 Galvanized tubing."

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax: (503) 225-1257**
**PL01--53078**

32.     Events subsequent to California Steel's April 27, 2017 email further reveal the fraud being perpetrated pursuant to the Redbuilt/California Steel conspiracy.  In June 2017, with respect to steel tubing delivered on May 3, 2017, California Steel forwarded to Web Joist two test reports from Metals Technology. The tests revealed that California Steel had secured two metallurgical tests from the same 18-inch long sample of 1-1/8 inch round 13 gauge steel tubing. The two tests bear the same date, consecutive test numbers 489153 and 489154 and have the same heat number 077334.  One report, which upon information and belief was intended for Redbuilt, shows the steel to meet the specifications for ASTM A500 Grade C.  The other report intended for Web Joist shows that the same tube meets the much lower ASTM galvanized tubing standard.  The two reports are displayed below with the most pertinent information highlighted in yellow.

GALVANIZED TUBING TEST:



**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax:  (503) 225-1257**
**PL01--53078**

ASTM A500 Grade C Test:

METALS TECHNOLOGY, INC.
19801 Nordhoff Street
Northridge, California 91324
(818) 882-6414   (323) 873-7144   FAX: (818) 882-4490

CERTIFIED TEST REPORT NO. 489153   (Page 1 of 1)                    8/31/2016

CUSTOMER:  CALIFORNIA STEEL & TUBE        HEAT NO.:  077334
MATERIAL:  STEEL                          PART NO.:  1-1/8" RD X 13 GA X 18"
SPECS:     PO REQUIREMENTS
MISC.:     GALV TUBING, ASTM A500, GRADE
           C

*** TUBE SEGMENT TEST RESULTS ***

| TEMP | O.D. (in.) | WALL (in.) | WIDTH (in.) | AREA (in.²) | YIELD (lbs) | YIELD (ksi) | ULT (lbs) | ULT (ksi) | ELONG % |
|------|------|------|------|------|------|------|------|------|------|
| RT | 1.125 | 0.095 | 0.255 | 0.0245 | 1730 | 70.5 | 1835 | 75.0 | 15 |
|    |       |       |       | REQUIREMENTS |    |      |      |      |    |
| RT |       |       |       |        |      | 46.0 |      | 62.0 | --- |

YIELD @ 0.2% OFFSET   STRAIN RATE: .005 in./in./min   GAGE: 1.0

*** REMARKS ***
END USE: ROOFING/CONSTRUCTION INDUSTRY

RESULTS ALSO REPORTED ON MTI 489154

CALIFORNIA STEEL & TUBE
16049 STEPHENS ST
CITY OF INDUSTRY, CA 91745

TESTED IN ACCORDANCE WITH: ASTM E8

CERTIFICATE SHALL NOT BE REPRODUCED EXCEPT IN FULL, WITHOUT THE WRITTEN APPROVAL OF THE LABORATORY.

TESTS LISTED ABOVE                    RESPECTFULLY SUBMITTED,
MEET CUSTOMER REQUIREMENTS

                                      DAN FITZGERALD, QUALITY ANALYST
                                      METALS TECHNOLOGY, INC.

33.     Further, in connection with every single delivery of steel tubing supplied by California Steel since early April 2017, the truck driver has complained to Web Joist that he has had to wait four to five hours while California Steel removes dozens of ASTM A500 Grade C labels on the banded units and replaces them with substitute stickers stating that the product is meeting only the ASTM A787 nonstructural galvanized tubing standard.

34.     On at least two occasions, the large substitute label that is inserted at the end of each unit with a wire insert representing the product as ASTM A787 has also contained an irregularly affixed original label of the type placed on the bands of units of steel tubing.  In those two instances, that label is one of the originals showing that the product was actually ASTM A500 Grade C.  The larger ticket, metal insert, and the inadvertently affixed smaller label are all shown below:

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR  97201
Tel:  (503) 225-0777 / Fax:  (503) 225-1257
PL01--53078



35.     On October 23, 2017, again in connection with a shipment where the truck driver had to wait for four or more hours while all of the product labels were changed out, the truck driver provided Web Joist with one of the unit labels that had been removed from a unit.  This label shows that the product was in fact manufactured to the ASTM A500 Grade C specification. The substitute labels affixed to the steel tubing delivered from California Steel on October 23,

2017 show that the steel tubing was manufactured from the very same heat number 092381 as the removed unit tag. Following the delivery, California Steel continued to carry out its conspiracy and provided Web Joist with only the nonstructural galvanized tubing test result from Metals Technology. The removed ASTM A500 Grade C unit tag is shown below:



Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
PL01–53078

36.     In the furtherance of defendants' conspiracy, California Steel not only refuses to provide the ASTM A500 certification to Web Joist, but also charges higher prices for a product that is actually ASTM A500 Grade C steel tubing than it charges defendant Redbuilt for the same commodity.  The California Steel sales representative with responsibility for the Web Joist account has acknowledged that Redbuilt receives lower pricing and that his company is actually providing structural steel tubing to Web Joist that meets the ASTM A500 Grade C standard.  In a lunch meeting on December 12, 2017, California Steel's John Betance stated to Web Joist's President Kevin Sweet:  "You know for a fact that you are getting the same steel as Redbuilt, but we can't guarantee it."

## REDBUILT'S MONOPOLIZATION OF THE OPEN WEB TRUSS MARKET IN THE UNITED STATES

37.     Redbuilt has a long history of utilizing anticompetitive tactics to achieve what is now an estimated 95% share of the open web truss market in the United States.

38.     In September 2011, Redbuilt purchased its then next largest competitor, Standard Structures, Inc., which held a market share of approximately 25% in the market for open web trusses. Then, despite promising to operate the plant, Redbuilt permanently shuttered the Standard Structures manufacturing facility in Windsor, California.  The effect of this anticompetitive acquisition was to increase Redbuilt's share of the U.S. open web truss market from 65% to 90%.  In 2011, Web Joist held an estimated market share of 10% in the open web truss market.  That share has been reduced by 50% as a result of Redbuilt's anticompetitive actions as described below.

39.     Over the last five years, Redbuilt has used and continues to utilize multiple methods to convince project architects and engineers on public works projects to designate

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR 97201
Tel: (503) 225-0777 / Fax: (503) 225-1257
PL01--53078

Redbuilt's open web trusses in project plans with such detailed specifications as to constitute a proprietary specification.  This tactic has been in clear violation of the public contract codes of many U.S. states, which prohibit the drafting of public works construction bid specifications in a manner that limits the bidding, directly or indirectly, to any one specific company or concern.

40.     Redbuilt has used and continues to use a pattern of false and intimidating statements regarding the superiority of their products in order to convince project architects, engineers and general contractors that Web Joist's products cannot be approved as equal substitute products in public or private construction projects.

41.     The exclusive dealing arrangement between Redbuilt and California Steel described above is only the most recent anticompetitive tactic being utilized by Redbuilt to drive its sole remaining competitor out of business.

42.     Redbuilt already holds an estimated 95% market share in the United States open web truss market.  Redbuilt's anticompetitive actions as alleged above are allowed to continue, Web Joist will be forced out of business.

### FIRST CLAIM FOR RELIEF

### (Conspiracy to Restrain Trade – 15 U.S.C. § 1)

### (Against Both Defendants)

43.     Plaintiff realleges paragraphs 1 through 42.

44.     Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits contracts and conspiracies in restraint of trade in interstate commence within the United States.

45.     As alleged above, Redbuilt and California Steel have illegally conspired with the specific intent to restrain trade in the United States open web truss market in violation of the Sherman Act.

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax: (503) 225-1257**
**PL01–53078**

46.     Defendants' illegal conspiracy to restrain trade has caused Web Joist to suffer significant damages in the form of lost profits, both past and future, in amounts to be proven at trial.  Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Web Joist is entitled to recover treble damages from defendants jointly and severally together with prejudgment interest and its reasonable attorneys' fees and costs incurred herein.

47.     If defendants' conspiracy is not enjoined, Web Joist will suffer irreparable harm in the form of lost market share and, ultimately, the loss of its business.

48.     Web Joist is entitled to temporary, preliminary, and permanent injunctions ordering California Steel to deal with Web Joist on terms equal to those it offers Redbuilt, including providing testing results and certification of all steel tubing under the ASTM A500 standard to the same grade and at the same price that it sells to Redbuilt.  The Court should also declare the exclusive dealing agreement between Redbuilt and California Steel to be an unlawful restraint of trade and, therefore, null and void.

## SECOND CLAIM FOR RELIEF

### (Conspiracy to Monopolize – 15 U.S.C. § 2)

#### (Against Both Defendants)

49.     Plaintiff realleges paragraphs 1 through 42.

50.     Section 2 of the Sherman Act, 15 U.S.C. § 2, prohibits conspiracies to monopolize any part of trade in interstate commerce within the United States.

51.     With the specific intent to perpetuate its monopoly power in the United States open web truss market, Redbuilt and California Steel illegally conspired to eliminate competition from Web Joist in violation of Section 2 of the Sherman Act.

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax:  (503) 225-1257**
**PL01--53078**

52.     Defendants' illegal conspiracy to monopolize the open web truss market has caused Web Joist to suffer significant damages in the form of lost profits, both past and future, in amounts to be proven at trial.  Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Web Joist is entitled to recover treble damages from the defendants jointly and severally together with prejudgment interest and its reasonable attorneys' fees and costs incurred herein.

53.     If defendants' conspiracy is not enjoined, Web Joist will suffer irreparable harm in the form of lost market share and, ultimately, the loss of its business.

54.     Web Joist is entitled to temporary, preliminary, and permanent injunctions ordering California Steel to deal with Web Joist on terms equal to those it offers Redbuilt, including providing testing results and certification of all steel tubing under the ASTM A500 standard to the same grade and at the same price that it sells to Redbuilt.  The Court should also declare the exclusive dealing agreement between Redbuilt and California Steel to be an unlawful restraint of trade and, therefore, null and void.

### THIRD CLAIM FOR RELIEF

### (Monopolization – 15 U.S.C. § 2)

### (Against Redbuilt)

55.     Plaintiff realleges paragraphs 1 - 42.

56.     Section 2 of the Sherman Act, 15 U.S.C.§ 2, prohibits monopolization of any segment of interstate commerce within the United States.  With specific intent to perpetuate its monopoly power in the United States open web truss market, Redbuilt has engaged in the anticompetitive actions described in paragraphs 38 - 41 above to eliminate competition in the open web truss market in violation of § 2 of the Sherman Act.

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax:  (503) 225-1257**
**PL01--53078**

57.     Redbuilt's monopolization of the open web truss market has caused Web Joist to suffer significant damages in the form of lost profits, both past and future, in amounts to be proven at trial.  Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Web Joist is entitled to recover treble damages from Redbuilt, together with prejudgment interest and its reasonable attorney's fees and costs incurred herein.

58.     If Redbuilt's ongoing illegal anticompetitive tactics are not enjoined, Web Joist will suffer irreparable harm in the form of lost market share and, ultimately, the loss of its business.

## FOURTH CLAIM FOR RELIEF

### (Knowing Inducement and Receipt of Discriminatory Pricing – 15 U.S.C. § 13(f))

### (Against Rebuilt)

59.     Plaintiff realleges paragraphs 1 through 42.

60.     The Robinson-Patman Act, 15 U.S.C. § 13, prohibits any person engaged in commerce from knowingly inducing or receiving a discrimination in price in the purchase of commodities of like grade or quality.

61.     Since at least 2009, both Redbuilt and Web Joist have purchased steel tubing, a commodity good of like grade and quality, from California Steel.  For at least the past four years, Redbuilt has knowingly induced and received discriminatory pricing from California Steel that is preferable to the pricing offered to Web Joist.

62.     Redbuilt's knowing inducement and receipt of discriminatory pricing from California Steel has harmed competition in the United States open web truss market and has damaged Web Joist in an amount to be proven at trial.

Haglund Kelley LLP
200 SW Market Street, Suite 1777
Portland, OR  97201
Tel:  (503) 225-0777 / Fax:  (503) 225-1257
PL01--53078

63.     Redbuilt's knowing inducement and receipt of discriminatory pricing has caused significant damage to Web Joist in an amount to be proven at trial that includes the discriminatory price differential imposed on Web Joist compared to the steel tubing pricing provided to Redbuilt plus lost profits associated with the loss of business, both past and future, resulting from the discriminatory pricing.

64.     Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Web Joist is entitled to recover treble damages against Redbuilt together with prejudgment interest and its reasonable attorneys' fees and costs incurred herein.

## FIFTH CLAIM FOR RELIEF

### (Discriminatory Pricing and Refusal to Deal in Restraint of Trade – 15 U.S.C. § 13(a))

### (Against California Steel)

65.     Plaintiff realleges paragraphs 1 through 42.

66.     The Robinson-Patman Act, 15 U.S.C. § 13, prohibits any person engaged in commerce from discriminating in price between purchasers of commodities of like grade or quality.

67.     As alleged herein, California Steel has violated the Robinson-Patman Act by discriminating against Web Joist in the prices that it has charged for Steel Tubing for at least the past four years.

68.     California Steel's discriminatory pricing against Web Joist has harmed competition in the open web truss market, and has damaged Web Joist in an amount to be proven at trial.

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax:  (503) 225-1257**
**PL01--53078**

69.     To prevent California Steel from continuing to violate the Robinson-Patman Act as alleged above, this Court should enter temporary, preliminary, and permanent injunctions ordering California Steel to deal with Web Joist on terms equal to those it offers Redbuilt.

70.     California Steel's price discrimination has caused significant damage to Web Joist in an amount to be proven at trial that includes the discriminatory price differential imposed on Web Joist compared to the price  provided to Redbuilt plus lost profits associated with the loss of business, both past and future, resulting from the discriminatory pricing.

71.     Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Web Joist is entitled to recover treble damages against California Steel together with prejudgment interest and its reasonable attorneys' fees and costs incurred herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court award the following relief:

1.      For temporary, preliminary, and permanent injunctions ordering California Steel to deal with Web Joist on terms equal to those it offers Redbuilt;

2.      For an order declaring the exclusive dealing agreement between Redbuilt and California Steel to be an unlawful restraint of trade and, therefore, null and void;

3.      On its First and Second Claims for Relief, for an award of treble damages for plaintiff's lost profits, both past and future, in amounts to be proven at trial jointly and severally against both defendants;

4.      On its Third and Fourth Claims for Relief, for an award of treble damages in an amount to be proven at trial against defendant Redbuilt;

5.      On its Fifth Claim for Relief, for an award of treble damages in an amount to be proven at trial against defendant California Steel;

6.      For an award of prejudgment interest on all damages awarded;

**Haglund Kelley LLP**
**200 SW Market Street, Suite 1777**
**Portland, OR  97201**
**Tel:  (503) 225-0777 / Fax: (503) 225-1257**
**PL01--53078**

7.      For an award of plaintiff's reasonable attorney's fees and costs incurred herein; and

8.      Granting such other and further relief as the Court deems just and equitable.

Dated this 16th day of February, 2018.

HAGLUND KELLEY LLP


By: *s/Michael E. Haglund*
        Michael E. Haglund, OSB No. 772030
                pending admission *pro hac vice*
        Michael K. Kelley, OSB No. 853782
                pending admission *pro hac vice*
        Eric J. Brickenstein, OSB No. 142852
                pending admission *pro hac vice*
        200 SW Market Street, Suite 1777
        Portland, OR  97201
        (503) 225-0777
        (503) 225-1257 (fax)
        mhaglund@hk-law.com
        kelley@hk-law.com
        ebrickenstein@hk-law.com


JAMESON BABBITT STITES & LOMBARD

By: *s/Bruce P. Babbitt*
        Bruce P. Babbitt, WSBA No. 4830
        801 2nd Avenue, Suite 1000
        Seattle, WA  98104-1515
        (206) 292-1994
        (206) 292-1995 (fax)
         bbabbitt@jbsl.com
        LOCAL COUNSEL

                Attorneys for Plaintiff


22 – COMPLAINT
CASE NO. _____